79  423
s186s  18

## John Gordon et al. v. Henry R. Johnson et al.

1. CHANCERY PRACTICE—*Where a Cross Bill is Unnecessary.*—Where the facts set out in the cross-bill can all be shown under an answer, a cross-bill is unnecessary.

2. FRAUDULENT CONVEYANCE—*Rights of Children Under it.*—Where a deed is declared fraudulent as to creditors, children of the grantee are entitled to nothing under it.

Bill, to enforce a vendor's lien.   Error to the Circuit Court of Morgan County; the Hon. CYRUS EPLER, Judge, presiding.   Heard in this court at the May term, 1898.   Affirmed.   Opinion filed December 2, 1898.

W. P. CALLON, attorney for plaintiffs in error.

MORRISON & WORTHINGTON, attorneys for defendants in error.

PER CURIAM.

This was a bill to enforce a vendor's lien upon the E. $\frac{1}{2}$ N. W. fr'l $\frac{1}{4}$ and thirty acres off the west side of the N. E. $\frac{1}{4}$ of Sec. 18, T. 14 N., R. 11 W., and 3$\frac{3}{4}$ acres (20 rods by 30) in S. W. corner of the S. E. $\frac{1}{4}$ of Sec. 7 in same township and range; part in Scott county and part in Morgan, and in the pleadings referred to as "the 94-acre tract."

It was filed August 19, 1894, by Henry R. Johnson, grantor in the deed reserving the lien, against John Gordon, the grantee, Mary E., his wife, and Mrs. Stryker, who held a prior lien by mortgage from said Gordon upon this ninety-four-acre tract and other parcels of land, and by amendment others, children of said Gordon, who were alleged to have interests to be affected by the decree sought.

Mrs. Stryker with her answer filed a cross-bill asking the foreclosure of her mortgage, and the decree was substantially according to the prayer of the bill and cross-bill.

It appears that on February 4, 1884, John Gordon, being legally indebted to the Jacksonville National Bank individually and also as a member of the firm of John Gordon & Company and Loar & Gordon, borrowed of Mrs. Stryker $14,000 on his note of that date, due in five years, with annual interest at the rate of seven per cent, secured by mortgage, in which his wife joined, upon the ninety-four-acre tract, and also the E. $\frac{1}{2}$ N. E. $\frac{1}{4}$ Sec. 7; the W. $\frac{1}{2}$ N. W. $\frac{1}{4}$ Sec. 8; the S. E. $\frac{1}{4}$ Sec. 17; and the S. $\frac{1}{2}$ N. E. $\frac{1}{4}$ of said Sec. 18, all in said T. 14 N., R. 11 W.

On February 6, 1884, he paid to the bank out of the sum so borrowed the full amount of his individual indebtedness, being $8,240.04, but nothing whatever on account of either of the firms mentioned.

The indebtedness remaining unpaid and unsecured, although efforts had been made to adjust it, and the amount owing by those firms had been ascertained and fixed by notes, the bank, on February 22, 1886, brought matters to a crisis by a suit in attachment against Gordon on two notes, one by Loar & Gordon of July 5, 1885, for $14,351.18, and the other, of Gordon individually, though for a debt of John Gordon & Company, of July 1, 1885, for $4,000, each drawing interest from date at the rate of eight per cent per annum, and the writ was upon that day duly levied upon all the lands above described. Negotiations immediately following resulted on the 10th of March, then next, in a settlement by which the bank was to accept in full satisfaction of all the claims it then held against him, certain lands to be conveyed and caused to be conveyed by him to or for it.

In pursuance of the terms of that agreement, Gordon, by his warranty deed of that date, in the execution of which his wife and two of their sons, John B. and Frank T. Gordon, joined, conveyed to Henry R. Johnson, who represented the bank, the three parcels constituting " the 94-acre tract " above described, and procured to be conveyed to him, also

for said bank, by Samuel W. Heaton, who was his half brother and a member of the firm of John Gordon & Company, certain other parcels comprising 284 acres, situated in Scott county, and not covered by the Stryker mortgage nor subject to any other adverse claim. The ninety-four-acre tract was subject to that mortgage, but upon its conveyance to Johnson as stated, and as part of the same transaction, Gordon, being then in possession, accepted a lease of the same premises, by which, in addition to the payment of $500 as annual rent, he bound himself to keep down the interest on the Stryker mortgage, to put the fences in repair and pay the taxes on said lands for the years 1885 and 1886 and all the costs that have accrued or may accrue in the attachment suit mentioned and then pending in the Circuit Court of Morgan County whenever the same may become due and payable.

On the 29th of May, 1886, judgment for the plaintiff for $19,137.11 and costs was rendered and entered in said attachment suit, and thereupon by the plaintiff fully satisfied of record. The notes were thus merged in and canceled by that judgment. No other claim then held by the bank against John Gordon, individually or otherwise, is disclosed by the record in this case.

He continued to hold the ninety-four-acre tract under the lease until the 23d of August, 1890, when Henry R. Johnson and wife, by their deed of that date, reconveyed to him all their right, title and interest in and to said ninety-four-acre tract. The consideration expressed in said deed was $2,812.50 paid, and six notes given by Gordon as follows: one for $962.50, due March 1, 1892; one for $1,300, due March 1, 1895; one for $1,240, due March 1, 1894; one for $1,180, due March 1, 1895; one for $1,120, due March 1, 1896, and one for $1,060, due March 1, 1897, in all $6,862.50, and each drawing interest from maturity at eight per cent per annum. In the deed it was recited and the fact was that each of the notes contained a provision that if any part of principal or interest therein stated should remain unpaid for ninety days after it became due, all remaining unpaid

upon all should be held due and collectible at the option of the holder, and a vendor's lien for the amount was expressly reserved. The one first maturing having been paid, but no more, on March 19, 1894, the original bill herein was filed (as above stated) to enforce that lien.

On the 23d of February, 1886—the day after the attachment was levied and a certificate thereof filed—a deed was filed for record from John Gordon to William Gordon, dated November 16, 1883, purporting to convey the W. ½ N.W. ¼ of Sec. 8 and the E. ½ of the S. E. ¼ of Sec. 17, T. 14 N., R. 11, W. of 3d P. M., in trust to permit the grantor to hold, use and control the same and the income thereof during his life, and upon his death to convey said lands in fee to his children named (Virginia, Vasey, Lillie, Agee, Jessie, Johnson, Louisa, John B., Frank T. and Harry C. Gordon) in equal parts.

The consideration expressed in this deed was one dollar; the lands described were a part of those included in the Stryker mortgage, and its date was nearly three months anterior to that of said mortgage; but it is conceded to be without effect as against that lien for want of notice of it to the mortgagee. It seems to be claimed, however, that the bank had such notice prior to the levy of its attachment. John Gordon testified that before it was prepared he consulted with Mr. Morrison, a director, and Mr. Beesley, the cashier of the bank, in regard to it; that Mr. Beesley, who was also a notary public, went with him to Mr. Morrison's office and remained there while the deed was being written; that Beesley then took it to the bank, put on his seal and knew all about it; that it remained in his possession for a good while, but just how long the witness did not know, and that Mr. Fitzsimmons, the president of the bank, knew of it before the attachment, for he (Gordon) talked with him about it in the course of an attempt to adjust their matters. In view of this notice it is claimed that the deed is material as affecting the order of sale and application of proceeds under decree herein, especially as touching the alleged interest of the grantor's daughter Louisa, and that

the court erred in directing the sale of those tracts or any part of either, to satisfy Mrs. Stryker's claim, before selling the ninety-four-acre tract or any part thereof.

The testimony of John Gordon on this question of notice, which is all that the record shows in relation to it, and the substance of which is fully stated above, while establishing the fact that these bank officers were aware of the preparation of this instrument before the levy of the attachment, fails to show a delivery of it by him or his order to or for his brother, the trustee therein named. The limited extent of his statement, and his failure to produce any other evidence on that subject, rather warrant the conclusion that it was not in fact or even in intention so delivered. Why should Beesley retain it "a good while" if it was intended to be delivered presently or at any time before the attachment? Gordon was then indebted to the bank on notes for more than $13,000 as a partner, and over $8,000 individually, and pressed for settlement by payment or security. The lands covered by the mortgage were required as security for the $14,000 he borrowed soon afterward from Mrs. Stryker, and though he says, and no doubt truly, that he was the real owner of the lands described in the deed from Heaton to Johnson, it is not to be presumed that his creditors so understood, the legal title, as he says, "being then in Heaton." They were estimated at only $11,360 ($40 per acre). If he owned any land other than these and those covered by the Stryker mortgage it does not appear. The bank, having claims of over $26,000, would hardly consent to his withdrawing from these assets, not over abundant, in view of his liabilities in sight, so large a part for his own use for life and giving the remainder in fee to his children, without some arrangement for its own security. Whether he retained enough to defend the trust deed against impeachment for fraud, would be a question fairly presented by the situation shown. That would reasonably account for the retention of the deed to be delivered thereafter when the bank should be secured, and for Gordon's omission to testify, or call the trustee or some bank officer to

testify, that it was completely executed by delivery before the attachment was levied. That it was not filed for record until after the levy is of itself a strong circumstance in the nature of proof, which, supported by others here stated, induced the belief that it had not been previously delivered; that the bank accepted the deed for the ninety-four acres in part satisfaction of a valid lien subsisting from February 22, 1886, and paid for them their full value, notwithstanding the Stryker mortgage, in the belief, upon just grounds, that the lands embraced in that mortgage, other than the ninety-four acres, would suffice to satisfy it, and having no notice of any other prior incumbrance, and that the trustee and beneficiaries under the trust deed was postponed to it.

But it is further claimed that Louisa Gordon has an interest from other sources in the lands described in the trust deed, which was not subject either to the Stryker mortgage or the attachment levied by the bank against her father.

William Gordon, father of plaintiff in error John, died in 1839, seized of the two eighty-acre tracts described in the trust deed, and intestate, leaving his widow, Nancy, and six children, William, John, David, Mary, Elizabeth and Sarah. These tracts, which had been the family homestead, being then under mortgage to the State Bank of Illinois, were afterward sold on foreclosure, and James Gordon, brother of the deceased, became the purchaser. Having used money of the widow for that purpose, on the 17th of March, 1845, he conveyed to her one undivided third on the land for her life, and the remainder, together with the other two-thirds, to the children above named. She afterward intermarried with one Heaton, by whom she had one child (being the Samuel W. hereinbefore mentioned). The son David died during her lifetime intestate, unmarried and without issue. She continued to live on the premises with some of her children, and died there in 1876. No partition was ever make.

It is conceded that John acquired the interest of all the other children of his father excepting David (although just

when or by what form of conveyance was not shown); and when he executed the trust deed he doubtless supposed that through them and his own inheritance he had acquired that of David also. But it is claimed that David died seized of an undivided $\frac{1}{6}$ of $\frac{2}{3}$ of these 160 acres, or $\frac{1}{9}$ of the whole; that upon his death each of his brothers and sisters, including his half-brother, Samuel W. Heaton, took $\frac{1}{8}$ of that interest, being $\frac{1}{72}$, and his mother $\frac{2}{8}$ or $\frac{1}{36}$, and that upon her death each of her surviving children inherited from her $\frac{1}{6}$ of that, or $\frac{1}{216}$ of the whole. This addition ($\frac{1}{72}$ plus $\frac{1}{216}$) would give to each $\frac{4}{216}$, or $\frac{1}{54}$.

Two of these children, William Gordon and Samuel W. Heaton, by deeds of September 18 and October 26, 1888, respectively, conveyed their interests thus acquired (in David's portion) directly from him and indirectly from their common mother, to their niece Louisa Gordon, giving her $\frac{2}{54}$ ($\frac{1}{27}$) of the 160 acres.

These deeds in the same terms describe the subject of the conveyance as "4, 44-100 acres, being my undivided interest in the W. $\frac{1}{2}$ N. W. $\frac{1}{4}$ Sec. 8 and E. $\frac{1}{2}$ S. E. $\frac{1}{4}$ Sec. 17 in T. 14 N., R. 11 W. of 3rd, P. M." This, however, is an overestimate in acres, one twenty-seventh of 160 acres being not nearly nine, but less than six.

If David's interest in these 160 acres (the home farm) had been acquired by John, of course it was not subject to the Stryker mortgage, and so much of it as Louisa thus acquired from her uncle, however small, could not be lawfully sold under a decree for its foreclosure. Yet it is earnestly complained in argument, though not specifically assigned for error, that the decree does so order, wholly ignoring and disregarding her rights.

Is there any substantial foundation for the complaint? That mortgage, of February 4, 1884, embraced 494 acres, including the two eighties composing the home farm (described in the deed of John to William Gordon November 16, 1883, but not recorded until February 23, 1886, in trust for grantor's use for his own life with remainder in fee to his seven children named (in equal parts), and also

the three parcels composing the ninety-four-acre tract and described in the deed of John, John B. and Frank T. Gordon to complainant Johnson with full covenants of warranty by their deed of March 10, 1886, and by him reconveyed to John by deed of August 23, 1890, reserving the vendor's lien here in question. Upon John Gordon's interest in all of these 494 acres that mortgage was confessedly the first, for the debt therein mentioned and by the decree found to be $16,196; and that interest, so far as appears or is claimed, embraced the whole, excepting only Louisa's 1-27 in the 160-acre home farm. Upon all of that interest subject to the Stryker mortgage the bank's attachment was levied before the trust deed referred to was recorded, for a debt which was paid by said conveyance of the ninety-four-acre tract and of other and outside lands conveyed at the same time by Samuel W. Heaton.

But while the whole of this interest in all these lands was liable to be sold if necessary to satisfy Mrs. Stryker's mortgage and leave nothing for the beneficiaries under the trust deed, or for Johnson in the ninety-four-acre tract except the statutory right of redemption, it might so turn out that less than all would suffice to satisfy her; hence the decree, which was of February 29, 1896, ordered that if a sale became necessary in default of payment, the master should offer in parcels as described in the pleadings, first, the 320 acres outside of the two trust eighties and the ninety-four-acre tract; that if these should not bring enough to pay her in full, then next, the three parcels composing the ninety-four-acre tract; and if from these also enough should not be realized to pay both her and Johnson, then lastly, the two eighties composing the home farm and described in the trust deed; but that only two-sevenths of their proceeds should be applicable to the payment of the amount still remaining due to Johnson, and the residue brought into court for its further order.

So it appears that the two parcels, in which alone any interest is claimed for Louisa, were by the decree made the last to be sold, and only in a contingency which might never

arise, and that even in that event her interest was fully pre-
served by the reservation of five-sevenths of their proceeds,
better than if it had been set off to her in land and exempted
from sale.    That interest not subject to the Stryker mort-
gage was only an undivided 1-27.    If she had any further
right in the land it was under the trust deed and amounted
to only 1-7 of the remaining 26-27, each of the other six
children being entitled to a like and equal interest in them.
These were all subject to the Stryker mortgage and also to
the life estate of their father.    To make a fair partition of
these two tracts—so far apart and otherwise so conditioned—
without material injury to the interests of the tenants in
common, would hardly be practical, and the court was not
called upon or required in this proceeding to attempt it.
The proceeds can be apportioned more equitably to those
entitled than could the land.

It is clear and well understood that the reservation was
made with a view to their better protection.    But the court
seems to have been in some doubt upon the evidence, as to the
validity and effect of the trust deed, upon the determination
of which depends the disposition of Johnson's claim of right
to have all the other lands embraced in the Stryker mort-
gage sold if necessary to satisfy it before resorting for that
purpose to the 94-acre tract, upon which alone he had any
direct or immediate lien for the unpaid residue of the price
at which he had sold it to the grantee.    Some matters ap-
pearing in the evidence have already been referred to as
reasonably suggestive of doubt on this point.    To whom and
in what amount he was indebted in addition to what he owed
Mrs. Stryker, the bank or Johnson, if anything does not
clearly appear, except that three judgments were rendered
against him in the County Court of Morgan County on
April 19, 1894, for $902, each of which executions were issued
and returned unsatisfied, and it is said that they were upon
notes treated as cash in his purchase of the 94-acre tract from
Johnson and for which, therefore, no lien was reserved.    The
evidence as to his (John Gordon's) means is meagre and un-
satisfactory.    He says he had about $4,000 worth of personal

property that the attachment was levied upon, a policy of: life insurance worth $4,000 and he "supposed" about $20,000 owing to him, but no particulars are given to show that it was available to creditors. All of the real estate that appears is what was mortgaged to Mrs. Stryker and what was deeded to Johnson by Samuel W: Heaton, who had the legal title. When the decree herein was rendered the mortgage deed had increased more than $2,000, and the lien debt to Johnson reduced only about $500. On the 23d of February, 1886—the day after the bank's attachment was levied—he conveyed to his sons John B. and Frank T. Gordon, the 94-acre tract which they afterward conveyed to Johnson with warranty, together with the said E. $\frac{1}{2}$ N. E. $\frac{1}{4}$ Sec. 7 and the W. $\frac{1}{2}$ S. E. $\frac{1}{4}$ Sec. 17. The consideration expressed in the deed was $3,000, in hand paid, and it was made subject to the Stryker mortgage, which the grantee therein expressly assumed and promised to pay, and a vendor's lien reserved for the purchase money evidenced by their note for $3,000 due five years after date. On the same day he deeded to Frank T. and Louisa Gordon, his son and daughter, his life estate in the trust lands (which were also in the Stryker mortgage) for nominal consideration of one dollar and the further and real consideration that the grantees are to keep the premises in good repair, pay all the taxes thereon and furnish and provide for him for the remainder of his life a comfortable room in the house on the premises, with board, lodging and fuel, and care for him and nurse him in sickness, and render him such services as his advanced age and condition in life may properly require. The deed entirely ignores Louisa's present right to one twenty-seventh of these premises, doubtless in innocent ignorance of its existence. Under the trust deed he was to be permitted to use the land himself for his own benefit; by this deed he relieves himself of the burden and conveys his estate in consideration of personal covenants of his grantees to support him on the land. If there was anything of value in the land mortgaged to Mrs. Stryker, over and above the growing mortgage debt and the lien of Johnson, which his creditors could reach, he

by these deeds to his children, if sustained, secured to himself a considerable portion if not all of it, in forms which might defy, or at least hinder, delay and harass them in any effort to compel payment. These transactions, without further explanation, were open to curiosity if not to suspicion.

The court might well desire to know. what he owed and what he had with which to pay; why the County Court judgments were not paid; why the legal title to so much of his land was in Heaton, if not to protect it against any claim for which John Gordon was liable; why the deeds to the children were made and the trust deed recorded on the 23d of February, 1886, unless it was suggested by the bank attachment of the 22d, and intended to shield them against others who might be more deterred by the Stryker mortgage than was the bank, and seek by timely proceedings to share *pro rata* with it in any surplus of value in the land; whether the bank did not surrender the trust deed to be recorded, after the levy of its attachment, because it knew that there had been no previous delivery and the date would not give it priority; was not the deed of the ninety-four-acre tract and other land to John B. and Frank T. Gordon, also of the 23d, made upon an understanding with the bank that they would join their father in a warranty deed for so much of it as the bank might agree to receive on a settlement of its claims. Upon these and perhaps other points touching the validity and effect of the trust deed, and consequently the interest of Louisa and the other children in the land, further proof and consideration might be required. If that deed was fraudulent as to creditors the children would be entitled to nothing under it. If valid and yet subject to the attachment for want of delivery and notice thereof to the bank before the levy, it would be for the court to determine whether that fact in connection with the deed to Johnson, with full covenants of warranty by the grantor in the trust deed, did or did not give him an equity to have the trust property sold to satisfy an incumbrance common to both and in full force when the deed to John-.

son was executed, before resorting to the tract so conveyed to him. And if the trust deed was both valid and prior to the attachment, the right of the beneficiaries, according to its terms, would seem to be clear to have the ninety-four acres first sold if necessary to satisfy that common incumbrance.

This question of right, as between Johnson and five of the children named as beneficiaries, the court did not finally decide; but thought it right to hold, as between him and two of said children, in his favor, and did hold that John B. and Frank T. were estopped to claim any interest in the lands described in the trust deed until the Stryker mortgage is fully paid off before resorting to the ninety-four-acre tract, and made the disposition it did of the two-sevenths of the proceeds of the trust land in case it should be sold. This estoppel was held to be the equitable effect of their own voluntary covenant, and therefore not dependent upon the further proofs, if any should be taken, upon the points above indicated. It is further contended by the plaintiffs in error that the Circuit Court erred in sustaining the demurrer to the amended cross-bill of John Gordon, one of the plaintiffs in error, and dismissing the same.

We find upon examination of said amended cross-bill that the complainant therein, John Gordon, prays that the court would decree a full release of the vendor's lien as to the said ninety-four-acre tract for the reason that he (John Gordon) was not indebted to the said Johnson, nor his principal, the said bank, for the amount of indebtedness for which the land was conveyed to Johnson to pay. But we think that no cross-bill was necessary to be filed in order to get the relief sought by the cross-bill, since the facts set out in the cross-bill could all be shown under the answers of the defendants in error filed to the original and amended bill, and under these answers the relief prayed in the cross-bill should be obtained. So the plaintiffs in error were not prejudiced by, nor did the Circuit Court err in sustaining, the demurrer to the amended cross-bill and dismissing the same.

From a careful consideration of all the evidence we are satisfied that John Gordon, as a member of the firms of John Gordon & Co. and Loar & Gordon, is indebted to Johnson for the use of the bank in the amount found by the Circuit Court, and for which it entered a decree in accordance with the vendor's lien reserved in the deed of Henry R. Johnson to John Gordon.

Finding no reversible error in the record in this case, we affirm the decree of the Circuit Court herein. Decree affirmed.